Good morning, your honors. I'm David Eisenstein. I'm the attorney for the appellants Rosemary Verdugo and Michael Verdugo, the mother and the brother of the decedent Mary Ann Verdugo. We're here because the district court has dismissed our complaint which was brought in state court, removed to federal court. The court's basis for jurisdiction is diversity and the dismissal was for failure to state a claim under 12b-6 and I'd just like to, with your permission, I just want to read a couple excerpts from the facts that were, I think, the operative facts in the complaint. Counselor, let me just be clear. There's agreement that California is the applicable law? Yes. Okay, and I think the question at the heart of this is what does California law say about an affirmative duty, if any, to supply an AED in a retail store? There's been no authoritative law in California. There has been a couple of things. The policy of California is to encourage the use of AEDs in governmental buildings and there's a statute for that. There's a statute for the purpose of encouraging and requiring AEDs in health facilities, health exercise facilities. Doesn't that cut against you in the following sense? This is classically a policy kind of judgment. What would be a good idea for the general public health and welfare? And the legislature has looked at that question and has said we will require this in certain contexts, but certain contexts only. Doesn't that suggest that the public policy of California is, at least at this point in time, limited to those places like government buildings and spas or health facilities? Well, actually not. When you answer that question, you have to keep in mind that throughout history, at least from the time I went to law school, California has been a leader when it comes, in the tort field, when it comes to mental distress cases, when it comes to res ipsa locator, when it comes to strict liability and torts. And so California is moving in that direction, as I see it. When they enter this field, of defibrillators. And they're in federal buildings, they're in state buildings, they're in health facilities, gyms, and all that. So the policy is moving in that direction, I think. I think so too, Judge. And you can look at the restatement of torts. That covers it. Have you looked at the restatement of torts? Yes, sir. Okay. Is there, what is there in the record? I mean, the record is just a complaint. Does the complaint, I guess two things. What does the complaint allege with regard to the difficulty of use of the AED? If it says anything. In other words, some of the earlier cases seemed to regard the use, a requirement that they have AEDs as burdensome because you'd have to have training or so on. Is there anything in the complaint regarding sort of the adjunct difficulty of having an AED? Well, the complaint alleges that the AEDs are sold for $1,200 by Target on the Internet to the public. So that tells you something about the difficulty. I understand that. But how about whether people have to be trained to use them? My actual understanding is no. But I'm just curious what's in this complaint. It's kind of a plug and go system. It does say that these are easily usable. Well, it seems, on page 122 of the excerpts, it does say at line, I can't tell if it's 14 or 15 because it's kind of between lines. It says they're so inexpensive and easy to use that defendant, I'm going to skip some words, has sold it for use by trained store personnel. So is there anything other than that reference that discusses the need for training? Or is that the sole place in the complaint? That's the reference that you're seeking. But it's two references. One is referring to customers that buy over the Internet. They don't have to be licensed anything. And what we are asking for the court to allow is for the jury to decide whether or not an AED would have avoided this incident if under use by trained store personnel. I'd still like an answer to my initial question, which is the relationship between this legislative policy that's been enacted and California's understanding of the common law. How do those two things relate? Okay. I think that it's not a narrow view. The public policy is not narrow at all. If you include, you've got the health facilities, the exercise facilities, you've got the government buildings, then you have the statutes, which the appellee and the district court thought might occupy the field, which actually are qualified immunity statutes, but which encompass anyone and everyone that obtains an AED and gets licensed. The training, the little training that's required on it. So that's a very inclusive public policy. Let's encourage AEDs. Let's assume we thought there was possibly something in what you were saying. Wouldn't we have to certify this to the California Supreme Court? It's rather a big deal. And not only that, if we were to decide this flat out, Target would basically have no recourse in terms of finding out. Somebody else might find out what the California Supreme Court thought of that, but Target never would, and we could easily be wrong. Well, I think there's two questions. One is, if the court is certain that the California law is, which we believe it is, that Target and others in their situation have... And you sought certification to the California Supreme Court, if I'm not mistaken. We did. So your previous position in this case is... We're okay with that. ...ask the California Supreme Court. We're okay with that. If this court is uncertain as to... Well, we certainly have to be uncertain. Well, I don't... You couldn't be certain. Here's one way you may not... In your favor. I'm not uncertain. There's one way you may not be uncertain. Judges Umpers and Graber. I think there's... Well, first of all, if you look at the California law, you've got certain statutory duties, but that doesn't preclude common law duties. I mean, common law duties are not precluded by this statute. If the legislature, your honor, had chosen to abrogate the common law, it could have said that. They didn't preclude it, you know. And... And, I mean, given the constraints that go on in the state legislature, the people who develop this defibrillator are probably very happy to... have it placed in federal and state buildings. I mean, we have a federal counter, so the whole... the whole trend of the law is to extend the use of this device to landowners. We do, and that's part of the public policy that I've been referring to. The Section 314A of the restatement, as cited with favor by the Delgado case, the California Supreme Court case, indicates that an owner, proprietor of a business, has a duty not only to render reasonable care, but special responsibility to its business invitees, customers, to render first aid when that is a situation that's required. And the question we ask is, did they breach their duty to render first aid? That's the duty that's in question. We don't have to really go through the rolling... Is there another section that is similar in relation to... You're looking at Section 3, the possessor of land. Is that your... Your Honor, I'm basing... Your Section 314A3, that's the one you're basing it on? Right. Possessor of land? Right. Okay. And the Kentucky Fried Chicken case, another California Supreme Court case, has indicated that the duties of common carriers are very similar to the duties of possessors of land. But that, I mean, in a way, it's kind of a moving target, because what would be considered first aid, you know, can change over time. And here, in order to render this first aid, they'd have to have a rather, you know, it's not terribly expensive, but, you know, big item in their store. It's not just doing something with minor, usual first aid stuff. So, the question is, who decides when the time has come? Well, if the duty is to render first aid to one in need of such aid, it would be the jury's responsibility to decide whether or not that duty's been breached by failure to have... But you're saying that even though duties, the question of duty is a question for the court, that's on sort of a gross level, i.e. there's a duty to render first aid, and exactly what there's a duty, whether this was within that duty would become a jury question. Right. What about...the part that gives me the most pause, really, is the...because actually, I think this is a fairly minor burden, especially on target stores that sells these things for $1,200, therefore probably buys them for $600, and it doesn't seem like a very big deal. But what about the foreseeability question? I mean, there's a lot of talk in the California cases about whether foreseeability is based on categorically or based on particular circumstances and so on, but here, you really don't have anything in the complaint about how likely it is that in any particular store someone's going to have cardiac arrest, but it's presumably very small on a numbers basis. And very certain. And the question is, what does that mean? What's the relevance? I mean, I would assume that...we don't know. First of all, we don't know. That's problem one. Problem two, if we did know, I assume it would be in any particular store, there's probably, you know, a fraction of 1% chance a year. Is that a pretty good guess? I think so. So the question is, how does that fit into the California theory of foreseeability? Foreseeability is on two different levels in California. One is on the judge's level, the court's level, in ruling based upon the law what the duty is in the case, and that's in the Rowland's considerations, also in a determination of no duty. Having reread Rowland's last night, the Rowland's considerations seem to be about something completely else. I agree. They don't seem to be about this at all. I agree with you. We don't... They seem to be about the question of when we're not going to have the usual negligence rules apply. Exactly. Exactly. And obviously, target owes a duty to the customer. So that's...Rowland is really not necessary. We don't have to go through that exercise. But Cabral says that if you talk about foreseeability on the two levels that we're talking about, which is the court's consideration of foreseeability versus the jury's level of consideration, the court is much more general, much more broad, and actually at the same time, much less intrusive, I guess, for lack of a better term, on the process. It's just kind of a...if it's foreseeable in a broad and general sense, then that's enough to get past the question of the duty. I still don't understand what that means. I mean, is the fact that there is a...that these things happen regularly in department stores, but regularly in any particular department store is going to be a minuscule likelihood. Well, here's...to boil it down... Is that a foreseeability? There is foreseeability because, as alleged in the complaint, target knows of, of course, they sell the AEDs, but they also decided, pursuant to a plan of the company, not to have AEDs in their stores. So they could foresee the prospect of this kind of a sudden cardiac arrest. I don't know. They could have decided not to have them because it wasn't foreseeable. We struggle with this concept of foreseeability and other concepts. You know, with a member in law school, it...foreseeability creates the duty and defines its scope. You better write that in your final exam and then go on from there. Now, so, I mean, you can take the restatement requirements and apply those and come up with an answer that would set a duty in a situation like this. But isn't there something in this record about 700,000 people a year die of cardiac arrest? Yes, in a complaint. And that you only have a small window, five minutes? That's correct. And if you're in a big store, and believe me, I love Target. I go there practically every Sunday and look at the ads and probably spent more than $100 this past weekend. I'm very happy with them. And the stores are large. And if you're in a mall, where many of them are, by the time you get the ambulance emergency service to get there, you've got...it's going to take time, two minutes, three minutes. And then to find the person in the store and have someone direct the emergency people over there. I mean, you're getting close. If everybody is very, very fast, you're getting close to the five minutes. Though they say if you do resuscitation, you could prolong that period. But the damage is ongoing. And isn't there something in the record that these devices today are very easy to use? You just open them up. It tells you where to put everything. And it's not going to administer the shock if it's not the proper case for it. So you don't have to be, I hate to use this term, a rocket scientist to figure out how to use this. Someone can...it's easy to use. And, I mean, we're not dealing with a local grocery store. I mean, we're dealing with huge retail establishments. And what did I...I think I read somewhere here that there are 300 people a day that die of cardiac arrest. And so I don't think it's such a big deal to have these large stores, have defibrillators there and train people. I think it'd probably be even the kind of environment that shoppers may want to go to. Because no one knows when it's going to happen to them. So, I mean, that's in the record, isn't it? Yes, Your Honor, and I am over my time. The Red Cross goes into this. Yes. The Great American Institute. That's alleged. Yeah. And I believe that the complaint is plausible as required under the Twombly standards. So we ask that the court allow it. One last question, despite the time. What about the Rotolo case? I mean, we would essentially have to...we wouldn't have to directly disagree with it, but we'd mostly have to disagree with it because it would be fairly absurd to say that these... that Target had to essentially have the AED but didn't have to use it. Or tell anybody else that it was even there. So, essentially, we would have to disagree with it. Two quick points on that, Judge. The district court judge below decided that Rotolo's discussion of common law was dicta to its decision, which was that there was a statutory provision in place that applied to the facts of that case. That's not really true. I mean, it's an alternative argument like any other alternative argument. And when a court says A and not only that, B, that's not dicta. Well, that was the district court's opinion of that. But we don't have to follow that. No, I understand that. But I'm just saying that that's one aspect of the Rotolo case that I think is important to consider. The other aspect is it was totally different on the facts. They had an AED there, and they were covered under the qualified immunity. Target could have qualified itself under this immunity. It hasn't qualified for the immunity to be absurd to allow it. It's not going to do a whole lot of good for the people that are covered then, though, because if the qualified immunity is you could have the thing, stick it in a drawer and never tell anybody, then what good is that going to do anybody? I don't disagree with your statement, Judge. There is also this following sentence in Rotolo, and it's in the midst of other things, but it says there is no duty to acquire an AED or have it available. Well, there isn't a duty. The duty under common law is to provide first aid. There's no duty written anywhere under common law that says that you have to provide an AED. That's not the duty that we believe applies in this case. It would be the jury's job to decide whether or not the duty, which is to provide first aid, has been breached by not having whatever should have been there under the circumstances of that particular case. I mean, you could have a statute in a city, for example, that says that the big box stores are not required to have handicapped toilets. And, okay, but that doesn't preclude the common law from going in that direction. Absolutely not. And if the legislator had wanted to preclude the courts from allowing common law claims. The legislation, you know, like our Chief Judge Chambers used to say, you take life on the installment plan. They named the building after him, too. I saw that. It's a beautiful building. And, judges, I think I've gone over my time quite a bit, so if I may, I'll sit down unless you have other questions of me at this time. Okay, thank you. Good morning. May it please the Court. My name is Ryan Craig. I am here representing Target Stores, a division of Target Corporation. Let me start by asking you where we started with your opposing counsel, or almost started with him. And that is, why isn't this a question that should be submitted to the California Supreme Court for determination? If we have any uncertainty whatsoever, and it does seem to be a difficult question, and it's solely a question of California state law as to whether this complaint states a claim, why shouldn't we ask that court to give us a definitive answer? Because I believe the California Supreme Court has already given this court a definitive answer in the case law of Delgado. Well, of course it hasn't. I mean, those cases are about something completely else. I don't agree, Your Honor. The cases, the California Supreme Court I don't respectfully agree. I don't respectfully agree, Your Honor. I apologize. That's all right. I think the California Supreme Court has set out the scope of the duty in this context. Those weren't even first-date cases. Yes, they are, Your Honor. Delgado talks and references broke. And also it failed to take up Rotolo on a petition for review. And you also have the Morris v. De La Torre case. The California Supreme Court has clearly said that the scope of a business owner's duty to render first aid to a customer who becomes ill or needs medical attention, that duty is fulfilled by summoning emergency medical services. I'm confused. Delgado was not a first-date case. It was a crime case. Delgado talks about cites to bro as it relates to the special relationship between a business invitee and a business owner and discussing in that context what the duty is to render first aid and approvingly citing bro for that concept. And bro says that the duty is fulfilled by summoning emergency medical services. There is no duty to, in fact, provide actual first aid by helping a choking victim, by performing the Heimlich maneuver, by doing CPR, or by using an AED. And somebody starts to bleed to death, starts bleeding and you have a tourniquet or you could put a bandana around it. You don't have to do it. The duty in California in general. Where are you getting this from? Excuse me, which part, Your Honor? The notion that there's nothing but a duty to call 911. It's in Delgado. What page? It's at page 241. And in the case of Morris de la Torre, it's at 260, where the court was reversing a summary judgment on the issue of whether or not the restaurant employees called 911 when the victim was being assaulted in a parking lot. All right. For example, it has long been recognized that restaurant proprietors have a special relationship duty to undertake relatively simple message, such as providing assistance for people who become ill. Where does it say that you have no duty except to call 911? It's citing Breaux, which held that a business proprietor met its duty when it summoned the police or medical service. It didn't cite that part of Breaux. It just cited more generally the part that said that you have a duty to help people who become ill or need medical attention. It says courts have found such a special relationship in cases involving the relationship between business proprietors, such as shopping centers. So there's nothing in any California Supreme Court opinion. So what you're relying on is that Delgado cites Breaux, not that part of Breaux, but Breaux says it. That's the best you can do. No, I don't think so, Your Honor. I believe Delgado does talk about, directly talks about, let me pull up the Delgado case. Counsel, I don't understand why you're fighting so hard. If you think the California Supreme Court has already found in your favor, and we asked it again, the worst they would either say is, no, we don't want to talk to you about it, or we already agree with you. I guess I don't understand why you object if there's any uncertainty at all. If this court finds that it's necessary for the California Supreme Court to weigh in on this issue, I do not oppose that per se. What I believe, and what I believe the record and the case law states, is that this isn't an issue. This issue has already been decided not only by the California Supreme Court, but by the California legislature. And if the California legislature wanted to create a duty for Target or any other commercial proprietor to have an ADD, it could have done so when it promulgated health care. Well, if the California legislature wanted to eliminate the possibility of any duty, they could have said that. Instead, all they said is nothing in this statute should create a duty. I think we're arguing in the wrong way, because as the appellant tried to persuade this court, that by instituting Health and Safety Code 1797.196, that it was abrogating common law. I don't believe that's true at all. What? By that, by that. Abrogating common law? You are arguing that. No. No. Let me restate what I said. The appellant is saying that the district court incorrectly applied 1797.196, saying that it was abrogating common law. I'm not saying it abrogates common law. I'm saying there's no common law now that we have to provide an ADD. But all that means is that the statute doesn't answer the question. That the common law is whatever the common law is, and the statute just said we're not creating anything different. When you put the California Supreme Court's decisions in combination with the legislative findings in 1797.196, there is no common law to provide this type of first aid. But who decides what the common law is? Who decides what the common law is? The California Supreme Court has decided what the common law is in this context. All right. Let's try that again then. Frankly, this is becoming fairly annoying. Where did the California Supreme Court decide this? In Delgado. Where they cited a different sentence from Baril than the one you're relying on. They cite to the whether or not the business invitee needs special medical assistance. Right. And they say yes. And they don't say what it is. So, let's go back. Such measures going down further in the page. Such measures may include telephoning the police or 911 for assistance. They include. Right. There's nothing in Delgado. There's just nothing in Delgado. There's nothing. I mean, there's a general approach to the foreseeability in question and the question of business inviting responsibility, but there's certainly nothing specifically on limiting the first aid obligation to calling 911. I think another way to ask the same question that Judge Berzon is getting at is, if we sent this case to the California Supreme Court on a certified question and the court were to say that there is a duty, would it have to overrule any of its prior precedents or would it simply be supplementing them or enlarging on them in some way? Before I can answer that question, I guess I need to ask a question. What duty are you talking about? I don't disagree that there's a duty based on a special relationship. The California law is the court decides the scope of that duty and I think between the Court of Appeals and the California Supreme Court, the scope has already been defined, that the scope is calling 911 in a timely fashion. But I guess my point is if the California Supreme Court is the final arbiter of what California common law is, couldn't it decide that in 2012 or 2016, whatever it is by the time they get to the case, that that common law duty is greater than it was in 2005 when Delgado was decided and in 1984 when Breaux was decided? They would have that option, wouldn't they? Yes, they would. Okay. And they wouldn't have to actually literally overrule any of their precedents to get there. They could develop the law further if they wanted to. I don't mean to be flippant with my response, but the court can do anything that it wants, whether it's right or wrong, in my opinion. If it wants to get to that result... Well, it's not a right or wrong kind of question. It's a public policy question and we seem to be, in my view, the least likely candidates for deciding state public policy of any of the possible candidates for deciding what state public policy should be. My understanding is, although I agree it's not in the complaint as such, that using an AED does not require any training, that the AED itself... I'm sorry, but I've been to classes about this and you open the thing up and it tells you what to do. Now, you may not do it as well as somebody who's trained, but you do it better than not doing it. I've never used an AED, so I cannot answer that question directly. We've done them right out here. If you want to be my first trial case, I'll be glad to do it, Your Honor. But the situation in California is... What did you just say? I said I would be willing to try it if you want to be the first patient. But I'm asking you, suppose that turned out to be the case. Suppose the complaint could be amended to state that the AEDs that are now being sold, and there's some discussion of that in some of the cases from other jurisdictions, are designed to be usable without training and that people can open them up and they essentially talk to you and tell you what to do. Suppose that were the allegation. Would that make a difference? No, it would not, Your Honor. Actually, with the Health and Safety Code in California, if Target purchased an AED and had it at their store and used it without training, they would be opening themselves up for liability because the statute requires to obtain... That there be one trained person in the store. A trained person that has to be scheduled during all business hours. And earlier in the discussion with the appellant, thinking that getting an AED is not that big of a deal or wouldn't that be burdensome, you have to look at it in the context of how many stores not only does Target have, but you have to look at all the other department stores in the state of California. Getting AEDs, training people on them, making sure that they're maintained on a monthly basis. Why would it be limited to department stores? Why wouldn't it be any retailer? Potentially, I don't see where you would draw an upright line. That's one of my points that the appellant is arguing in contravention of itself because on one hand it's saying that Target and the district court misapply Ballard and Cabral, but I'm saying it's the exact opposite. We have a rule in California right now that the duty is fulfilled by calling 911. Now, the appellant is looking for the court to create a new duty that relates to big box stores or department stores. But if you look at it just as Your Honor has stated, why would it be limited to that? And also in the reply brief, it talks about the distance to the closest emergency medical services. If you create a duty-based rule on the size of the store, how far it is from the nearest emergency medical services, you defeat the purpose of Cabral and Ballard. It's supposed to be a clear general application of a rule as to what the duty is. And it's Target's position that the duty in this case was fulfilled by calling 911. And another, just in a practical instance... But just to be clear, your position in that regard is that's true in any case. It's not just because of AEDs, for anything. Anything. Your position is that for anything. Or, you know, a lot of... But the only obligation is to call 911. The only legal obligation is to summon emergency medical services when it is necessary. And in this context, it was necessary. In a slip and fall, the person is not unconscious and can be asked whether they want emergency medical services contacted or not. No, I'm talking about liability for slip and fall. Well, that gets into a whole other context. If we're talking about slip and fall, do you have actual notice? Do you have constructive notice of the dangerous condition that preexisted the person slipping and falling? No, what we're talking about is if somebody slipped and fell and hurt themselves, would you have any obligation? If you could, for example, go and elevate their arm because you can tell it's been injured, but you don't have to do that. You can just call 911. You don't have to do anything that the patient doesn't want you to do. That isn't the question. What if the patient does want you to do it? Your position is there's still no obligation to do it. You don't have an obligation to do that. You don't have an obligation to render that type of first aid to someone. I hope that your larger position doesn't depend on that position because it seems to me that you have stronger arguments than taking the position that in any and all circumstances the only obligation is to call 911. That is not the only position that Target's taking in the case, and I wouldn't say that's the strongest argument either. So why are you taking it so strongly? I think that's the response to the question. Well, have you ever tried calling 911? Yes, Your Honor. But in the same situation— You get through right away. Not always, Your Honor, but I have to look at it from the practical situation. If Target had an AED at the store, then we have a quandary here because if you have the situation in Rotolo where you have an AED and you don't have an affirmative duty to use it, is Target still going to be standing here today if it had an AED and didn't use it based on the Rotolo holding? Is that what you're advising your client? No. I'm just pointing out that there is a somewhat disconnect.  But that if you have it, you will then incur other duties, and you could end up with liabilities that you want to avoid. Yes. Is that the actual—in terms of the burden here, which is a relevant factor, the burden isn't buying AEDs at $1,200, which probably costs you $600. That isn't the issue, really. The issue is what do you have to do once you have it. Correct. I don't say that the purchase price of that many stores, of that many AEDs, in the state of California is insignificant, but I think we can all agree from a practical standpoint, from Target's position, that the cost of the AEDs is not the overarching issue as related to whether or not the duty is there or the burden should be there.  When you get to that context of should we have common law that says that department stores have to have AEDs, there has to be some type of definition of what that entails, what size of store, then incurring— Well, the common law builds up over time. They just take that case that's before them, and the courts make a decision just based on that case and those facts, and then it goes on and on and on. I agree with that, Your Honor. Okay. Anything else you want to tell me? No, thank you, Your Honor. I will. First of all, Target, if it acquires an AED, doesn't have any duty under the statutes to do any of the training. If it wants to qualify for the immunity, then it does it. It's solely up to Target. Secondly, Breaux is a qualified immunity case in and of itself. The finding in favor of the restaurateur was because the restaurateur followed the statute that provided for qualified immunity if you have a poster that says what to do when there's a choking in your restaurant, and they had the poster. So that's not our case. It's a qualified immunity case, like Rotello is a qualified immunity case. Thank you. Thank you. All right. That concludes this session of the court. We'll recess until 9 a.m. tomorrow morning. All right. Thank you, Your Honor.
judges: Pregerson, Graber, Berzon